**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY E. PREST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:  11-cv-00475 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

August 31, 2012

**I.      Introduction**

Plaintiff, Anthony E. Prest, brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied his application for disability insurance benefits ("DIB") under title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433.

**II.     Background**

**A.      Facts**

Plaintiff was born on January 24, 1952.  He is a high school graduate and has past relevant work experience as a trucker.[1]

---

[1] Plaintiff reported that in his truck driver job, he was required to lift up to 100 pounds, and frequently lifted 50 pounds or more.  This is classified as "heavy work" under the Commissioner's regulations.  20 C.F.R. § 404.1567(d).

1

Plaintiff alleges disability as of September 1, 1992 due to asthma, chronic pain, depression, and degenerative disc disease. The record reflects that Plaintiff has not engaged in substantial gainful work activity since alleging disability in September 1992. Plaintiff's date last insured was established as December 31, 1995. To qualify for DIB, Plaintiff must show that he was disabled on or prior to his date last insured. 20 C.F.R. § 404.131.

Plaintiff has been collecting long-term disability since 1992 under a private long-term disability insurance policy.

**B.    Procedural History**

Plaintiff filed an application for DIB on October 23, 2007, in which he claimed total disability since September 1, 1992. An administrative hearing was held on June 30, 2009, before Administrative Law Judge William E. Kenworthy ("ALJ"). Plaintiff was represented by counsel and testified at the hearing. At the outset of the hearing, the ALJ and Plaintiff's counsel discussed the "date last insured" issue, and counsel acknowledged that "we really don't have a lot of records from [the relevant time period]." (R. at 39.) At the conclusion of the hearing, the ALJ stated that he would hold the record open for thirty (30) days to allow counsel to attempt to obtain additional records. On July 22, 2009, counsel for Plaintiff provided the ALJ with medical records dated 09-16-1996 through 08-09-2000 from Beaver Medical Center, which records were obtained from Plaintiff's long-term disability insurance carrier. (R. at 921 - 947.)

On August 11, 2009, the ALJ rendered an unfavorable decision to Plaintiff in which he found that Plaintiff was not under a disability at any time from September 1, 1992, the alleged onset date, through December 31, 1995, the date last insured.

The ALJ's decision became the final decision of the Commissioner on February 12, 2011, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.

On April 22, 2011, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the decision of the ALJ.  The parties have filed cross-motions for summary judgment.   Plaintiff contends that the ALJ erred when he failed to find that Plaintiff's disabling conditions began prior to December 31, 1995, in accordance with SSR 83-20.  Plaintiff requests that the decision of the ALJ be reversed and that he be awarded DIB benefits or, in the alternative, that the case be remanded to the Commissioner.

The Commissioner contends that the decision of the ALJ should be affirmed as Plaintiff has not met his burden to prove that he was disabled prior to December 31, 1995, the date on which he was last insured for disability benefits and that the decision of the ALJ is supported by substantial evidence.

The Court agrees with Plaintiff and will therefore grant in part the motion for summary judgment filed by the Plaintiff, deny the motion for summary judgment filed by the Commissioner, and remand the case for further proceedings.

**III.     Legal Analysis**

    A.     <u>Standard of Review</u>

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Capato v. Commissioner of Social Security*, 631 F.3d 626, 628 (3d Cir. 2010) (internal citation omitted). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Commissioner of Social Security*, 625 F.3d 798 (3d Cir. 2010).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Newell v. Commissioner of Social Security*, 347 F.3d 541, 545-46 (3d Cir. 2003) (*quoting Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from

4

engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter,* 247 F.2d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

(1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell,* 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell,* 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Newell,* 347 F.3d at 545-46; *Jones,* 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell,* 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Commissioner of Social Security*, 577 F.2d 500, 502 (3d Cir. 2010); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the second step of the sequential evaluation process. In making this determination, the ALJ concluded that Plaintiff was not under a disability, at any time from September 1, 1992, the alleged onset date, through December 31, 1995, the date last insured, and that as of December 31, 1995, Plaintiff had the residual capacity to perform sedentary work, with some environmental limitations.

**B.   Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3rd Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

As stated *supra*, Plaintiff claims that he is entitled to disability because he suffers from many impairments which are progressive in nature and, while they were not diagnosed in 1995, they have now been definitely diagnosed.  For example, he has been diagnosed, among other things, with asthma, osteopenia, spinal stenosis, migraines, inflammatory arthritis, cervicalgia, myalgias, degenerative disc disease, and  degenerative joint disease of multiple joints.  Additionally, Plaintiff alleges that he developed severe osteoporosis and bilateral avascular necrosis in his hips as a result of the steroids he was prescribed in an attempt to treat his severe asthma.

The ALJ was confronted in 2009 with the difficult task of determining whether Plaintiff's progressive impairments rose to the level of a disability prior to the date he was last insured, i.e., December 31, 1995.

The ALJ stated that through the date last insured, Plaintiff had the following severe impairments:  left elbow epicondylitis and asthma, but that neither of these impairments met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Significantly, the ALJ found that "[t]here is simply no evidence of medical diagnosis or treatment of asthma prior to the date last insured."  (R. at 31.)

However, the ALJ's finding is contrary to the September and October 1995 records of Patrick W. Sturm, M.D., a pulmonologist, who noted on September 1, 1995, that Plaintiff "is also on BRETHAIRE tablets and PROVENTIL[2] tablets by his recollection and a

---

2 Proventil, also known as Albuterol, "is used to prevent and treat wheezing, difficulty breathing

7

PROVENTIL INHALER and HYCODAN ELIXIR for cough." (R. at 607). Additionally, Dr. Sturm's office note of October 13, 1995 specifically states that "Mr. Prest is a 40-year-old gentleman I follow for **asthma** and sinusitis that is moderately severe at best. . . ." (R. at 608) (emphasis added). The ALJ also did not discuss the November 6, 2008, correspondence from Robert L. Grieco, M.D., Plaintiff's family physician, in which Dr. Grieco stated, as follows:

> Plaintiff's "story starts about **1993 when he developed severe asthma** after having an infection in his left elbow. This asthma was very severe, requiring chronic steroid use, oxygen therapy, he had low oxygen saturation in the 80's and he was followed by Dr. Sturm during this time. He required multiple antibiotics, inhalers and was very sick but finally turned around in 2000. **However, because of the steroid use he developed severe osteoporosis as well as a vascular necrosis of both of his hips**. This required hip replacement or surgery in both of his hips. . . . He has severe osteoporosis and he lost 4 inches of height in his back from multiple compression fractures. . . He has also, because of the steroid use, developed bicipital muscle rupture in both of his arms at different times . . . .

(R. at 879) (emphasis added).

The ALJ also found that while Dr. Sturm mentioned in his May 14, 2009, correspondence to Plaintiff's counsel that Plaintiff's treatment with corticosteroids "has led to very significant deterioration in his bone and he had what amounted to advanced osteoporosis that has led to multiple orthopedic issue," the ALJ found that the medical evidence of record was devoid of any evidence "to when that complication of treatment was first noted." (R. at

---

and chest tightness caused by lung diseases such as **asthma** and chronic obstructive pulmonary disease." *See* www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000355.

32.) Again however, the medical evidence of record contradicts this statement as Dr. Sturm noted in September 1995 that Plaintiff's past medical history was "[s]ignificant for mostly orthopedic problems with left shoulder and left elbow surgeries due to **degenerative disease**. He also has had lower back surgery." (R. at 607) (emphasis added).  Furthermore, a May 1995 report of George F. Medich, M.D., reflects that Plaintiff's past medical history consists of multiple surgeries which "include repair of left rotator cuff, dehiscence of left deltoid muscle, lateral epicondylectomy for lateral epicondylitis, herniorrhaphy, ankle ligament repair and L4, 5 laminectomy." (R. at 168.)

       The ALJ also did not discuss the medical records of Hector C. Pagan, M.D., a pain management physician, which reflect that during 1994, at every visit Plaintiff had with Dr. Pagan, he complained of pain in his neck, back, and shoulders. (R. 132 - 160.)  In fact, in January 1995, Dr. Pagan diagnosed Plaintiff with Thoracic Outlet Syndrome, although it would later be determined that Plaintiff was suffering from degenerative changes.

       Admittedly, based on the dearth of medical evidence pre-1995, adequate medical records for the most relevant period were not available.  Accordingly, it was a difficult task for the ALJ to determine the onset date of Plaintiff's disability.  However, as the Court of Appeals for the Third Circuit has noted, "in cases in which the onset date is critical to a determination of entitlement to benefits, an ALJ must grapple with and adjudicate the question of onset, however, difficult." Social Security Ruling 83-20 provides ALJs with an analytical framework for determining a disability onset date. SSR 83-20 states in relevant part:

> With slowing progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
>
> Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established.
>
> . . .
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination . . . How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

The Court finds that counsel for Plaintiff is correct that the ALJ in this case failed to follow this formula. The ALJ erred by not consulting a medical advisor to help him infer onset date as required by SSR 83-20. *See also Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541 (3d Cir. 2003); *Walton v. Halter*, 243 F.3d 703 (3d Cir. 2001). The Court concludes that an ALJ in a situation of this kind must call upon the services of a medical advisor rather than rely on his own lay analysis of the evidence. "Medical inferences needed to be made and therefore the ALJ should have called upon the services of a medical advisor." *Beasich v. Comm'r of Soc. Sec.*, 66 Fed. Appx. 419, (3d Cir. 2003). *See also Grebenick v. Chater*, 121 F.3d 1193, 1201 (8th Cir.

> With slowing progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
>
> Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established.
>
> . . .
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination . . . How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

The Court finds that counsel for Plaintiff is correct that the ALJ in this case failed to follow this formula. The ALJ erred by not consulting a medical advisor to help him infer onset date as required by SSR 83-20. *See also Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541 (3d Cir. 2003); *Walton v. Halter*, 243 F.3d 703 (3d Cir. 2001). The Court concludes that an ALJ in a situation of this kind must call upon the services of a medical advisor rather than rely on his own lay analysis of the evidence. "Medical inferences needed to be made and therefore the ALJ should have called upon the services of a medical advisor." *Beasich v. Comm'r of Soc. Sec.*, 66 Fed. Appx. 419, (3d Cir. 2003). *See also Grebenick v. Chater*, 121 F.3d 1193, 1201 (8th Cir.

1997) ("[i]f the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a 'legitimate medical basis' ").

The Court concludes that the evidence is ambiguous with respect to the onset date of Plaintiff's progressive impairments. As such, the ALJ was required to call upon a medical advisor to assist in inferring an onset date. It is not for the Court to determine when that date was, but it appears entirely possible that it was prior to December 31, 1995, given the opinions of Drs. Sturm and Greico.

**IV.    Conclusion**

In sum, the Court finds that the ALJ's determination that Plaintiff did not meet the disability standard prior to December 31, 1995, appears to conflict with some of the medical evidence. For this reason, the Court will grant in part the Motion for Summary Judgment filed by the Plaintiff, deny the Motion for Summary Judgment filed by the Commissioner, and remand this case for further proceedings consistent with the standards and analysis in the *Walton* case.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY E. PREST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   02: 11-cv-00475 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# ORDER OF COURT

**AND NOW**, this 31st day of August 2012, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1. The Motion for Summary Judgment (Document No. 9) filed by Michael J. Astrue, Commissioner of Social Security is **DENIED**;

2. The Motion for Summary Judgment (Document No. 11) filed by Plaintiff, Robert Gallagher, is **GRANTED IN PART AND DENIED IN PART**;

3. This case is **REMANDED** for reconsideration, rehearing, and/or further proceedings consistent with this opinion; and

4. The Clerk will docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:  Kelie C. Schneider, Esquire
Berger and Green, P.C.
Email: kschneider@bergerandgreen.com

Paul Kovac,
Assistant U.S. Attorney
Email: paul.kovac@usdoj.gov